UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>     **Plaintiff,**<br><br>VERSUS<br><br>COMMMONWEALTH ADVISORS, INC. AND WALTER A. MORALES,<br><br>     **Defendants.** | NO. 12-CV-700- BAJ-SCR |

### ANSWER ON BEHALF OF COMMONWEALTH ADVISORS, INC. AND WALTER A. MORALES

As their Answer to the Complaint filed herein, Defendants, Commonwealth Advisors, Inc. and Walter A. Morales ("Commonwealth," "Morales," or collectively "Defendants"), aver as follows:

### A. AFFIRMATIVE DEFENSES

1. Some or all of the Complaint fails to state a claim upon which relief may be granted.

2. Some or all of the claims and causes of action set forth in the Complaint are barred by the applicable statute of limitations, 28 U.S.C. §2462. See *Gabelli v. SEC*, 2013 WL 691002 (U.S. Feb. 27, 2013).

3. (a) Plaintiff's claims for equitable relief are barred by 28 U.S.C. §2462 and/or by the equitable principles of laches and equitable estoppel. It would be grossly unfair to permit Plaintiff to obtain equitable relief under the facts and circumstances presented here. The alleged wrongful conduct dates back to 2007. Beginning in the late spring of 2008, while much of the alleged wrongdoing was occurring, the Securities and Exchange Commission ("SEC") was

635210.1

obtaining copies of and reviewing virtually every document, e-mail, spreadsheet, correspondence, investor presentation, PPM, and other scrap of paper generated by Defendants in the course of their business operations. After giving notice to Defendants in early 2009 that it was opening a formal investigation, the SEC informally interviewed and conducted on-the-record interviews of many witnesses to and alleged participants in the scheme the Plaintiff alleges Defendants were involved in. The SEC took the on-the-record testimony of Defendant Morales no less than four times. Not only did plaintiff have complete and virtually unfettered access to Defendants' records and personnel, Plaintiff also obtained testimony and records from third party market participants who were heavily involved in creating, structuring, pricing, rating, trading, and valuing securities that went into the Collybus CDO, including securities that were issued by Collybus, and securities owned by Commonwealth-managed funds. The SEC sent Defendants a "Wells" notice on November 20, 2011, and Defendants sent Plaintiff their "Wells" submission on December 28, 2011. Yet Plaintiff did not bring this suit until nearly a year later.

(b) Not once over the course of its nearly five-year review and examination of Defendants' conduct did Plaintiff attempt to restrain or enjoin Defendants from anything the Plaintiff now claims was wrong. Throughout that time period the SEC allowed Defendants to operate their regulated investment advisory business, to manage investments for individual and institutional clients, and to manage the hedge funds. The Plaintiff should be estopped and/or barred by laches from now, years later, seeking equitable relief in the form of a permanent injunction or bar. There is no threat to the public of continuing harm and Plaintiff is estopped and barred by laches from claiming otherwise.

4. (a) In connection with the Collybus transaction and in connection with the funds' investment in residential mortgaged-backed securities ("RMBS"), Defendants reasonably

relied upon the Investment Bank that created, structured, and priced the collateral debt obligation ("CDO") and upon rating agencies that assigned ratings to RMBS that went into the CDO and the securities issued by the CDO. The Investment Bank and the rating agencies possessed superior knowledge of facts and risks associated with RMBS and CDOs. Defendants acted in good faith in connection with the funds' investment in Collybus and relied upon the ratings given to Collybus securities by national, reputable rating agencies.

(b)   In hindsight it appears that the investment grade rating given to the Collybus securities did not reflect the true risks of the securities. The rating agencies downgraded the Collybus securities as well as many of the RMBS that went into the CDO not long after the CDO was closed. Since this suit was filed by the SEC, Defendants have learned that the United States Department of Justice accuses at least one rating agency, Standard and Poor's ("S&P"), of having engaged in a massive mail and wire fraud scheme in rating CDOs in 2007. According to allegations in the Justice Department's suit against S&P, this fraud was ongoing at precisely the same time that S&P was in the process of reviewing the RMBS to be contributed to Collybus and rating the Collybus securities, ratings that Defendants relied upon in good faith and without knowledge of the fraud. Specifically the United States asserts that S&P "knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud investors in RMBS and CDO Tranches….In carrying out the scheme to defraud, S&P falsely represented that its credit ratings of RMBS and CDO tranches were objective, independent, uninfluenced by any conflicts of interest that might compromise S&P's analytic judgment, and reflected S&P's true current opinion regarding the credit risks the rated RMBS and CDO Tranches posed to investors. As S&P knew, these representations were materially false, and concealed material facts, in that S&P's desire for increased revenue and market share

in the RMBS and CDO ratings markets led S&P to downplay and disregard the true extent of the credit risks posed by RMBS and CDO tranches in order to favor the interests of large investment banks and others involved in the issuance of RMBS and CDOs who selected S&P to provide credit ratings for those tranches."[1] The United States further avers that "knowing that the credit risks of certain non-prime RMBS tranches were increasing, were expected to continue to increase, and were anticipated to result in negative Rating Actions, S&P knowingly disregarded the true extent of the credit risks associated with those non-prime RMBS tranches in issuing and/or confirming ratings for CDOs with exposure to those non-prime RMBS tranches, which ratings S&P knew did not accurately reflect those CDOs' true current credit risks because they failed to account for the increased credit risks posed by those non-prime RMBS tranches."[2] Relatively shortly after the Collybus CDO closed (and even before the closing in some cases), the rating agencies downgraded the ratings of many RMBS that were contributed to Collybus. Those downgrades caused or contributed to the Collybus C and D tranches failing the over-collaterization tests in 2008, which in turn caused or contributed to the downgrades of the C and D notes and their ultimate loss in value.

      (c)    The United States' assertions in its mail and wire fraud case against S&P are judicial admissions that are strong evidence in this case negating the Plaintiff's assertion that Defendants knowingly intended to deceive investors by creating Collybus. Defendants relied in good faith upon the ratings given to the RMBS going into Collybus and upon the ratings given the securities issued by Collybus. Defendants had no reason to suspect that those ratings resulted from the massive fraudulent conduct of one or more of the rating agencies.

---

[1] Complaint ¶¶7, 8. *United States v. McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC*, No. CV13-00779, U.S. District Court, Central District of California.
[2] *Id.*, ¶9b.

5. At all times mentioned in the Complaint and with respect to all matters contained therein, Defendants acted in good faith, and did not know, and in the exercise of reasonable care could not have known, of any misrepresentation, misleading statement or omission alleged in the Complaint. Defendants also reasonably relied upon reputable third party professional firms to independently value the assets owned by the hedge funds managed by Defendants, to audit the financial statements of the funds, and to effect trades of securities using best execution practices.

6. The Plaintiff's claims are barred, in whole or in part, on the grounds that Defendants did not at any time act with the intent to deceive, manipulate, or defraud investors or anyone.

7. The Plaintiff's claims are barred in whole or in part, to the extent that Plaintiff seeks to impose upon Defendants disclosure obligations that are inconsistent with those imposed pursuant to the federal securities laws.

8. The Plaintiff's claims are barred, in whole or in part, to the extent that any alleged misrepresentations or omissions would not have been deemed "material" by a reasonable investor in light of the totality of the circumstances.

### B. RESPONSE TO NUMBERED PARAGRAPHS IN THE COMPLAINT

General: Defendants object to and deny the Plaintiff's characterization of various transactions through the use of subheadings. Since Defendants deny the way in which the Plaintiff attempts to characterize the transactions, Defendants will not repeat the subheadings in this Answer.

And now, in answer to the separately numbered paragraphs contained in the Complaint, Defendants aver:

1. Defendants deny the allegations in Paragraph 1 of the Complaint.

2. Defendants deny the allegations in Paragraph 2 of the Complaint.

3. Defendants deny the allegations in Paragraph 3 of the Complaint.

4. Defendants deny the allegations in Paragraph 4 of the Complaint.

5. Defendants deny the allegations in Paragraph 5 that the Plaintiff is entitled to any of the relief sought.

6. Defendants admit the allegations in Paragraph 6 that the Plaintiff has authority under the cited statutes to bring this action, but Defendants deny that Plaintiff is entitled to any relief.

7. Defendants admit jurisdiction and venue in Paragraph 7 of the Complaint.

8. Defendants admit the allegations in Paragraph 8 of the Complaint.

9. Defendants deny the allegations in Paragraph 9 of the Complaint that Morales told any investor that he "pre-approved all fund trades." Defendants admit the remaining allegations of Paragraph 9.

10. Defendants admit the allegations in Paragraph 10 of the Complaint.

11. Defendants admit the allegations in Paragraph 11 of the Complaint.

12. Defendants admit the allegations in Paragraph 12 of the Complaint.

13. Defendants admit the allegations in Paragraph 13 of the Complaint that there was a "large investor" as described in Paragraph 13 who invested on behalf of its clients in one or more funds managed by Commonwealth.

14. Defendants admit the allegations in Paragraph 14 of the Complaint that Commonwealth was an investment adviser to individuals, institutional investors and hedge funds. Defendants deny that Commonwealth "transferred" individual clients into hedge funds.

635210.1

Rather, individual clients were offered the opportunity to subscribe for interests in the funds. Defendants admit the remaining allegations in Paragraph 14.

15. Defendants admit the allegations in Paragraph 15 of the Complaint that Commonwealth became the collateral manager to Collybus I ("Collybus"), a CDO, at the closing of the CDO on November 9, 2007. Defendants also admit that Commonwealth worked with the Investment Bank in helping to form Collybus, and that the Investment Bank acted as the lead structurer, placement agent and arranger for Collybus. Defendants further admit that investors in Collybus purchased or acquired notes from Collybus and the investors received returns on the notes that were dependent, to a degree, on the performance of the RMBS and other securities in the Collybus portfolio. Said returns were also dependent on the manner in which the cash flow from those assets was structured via the CDO "waterfall," which was governed by the CDO formation documents. Defendants deny the remaining allegations of §15. Specifically, Defendants deny that "failing RMBS" were removed from Commonwealth funds and conveyed to Collybus, and Defendants deny that they participated in selling impaired securities to Collybus.

16. Defendants admit the allegations in Paragraph 16 of the Complaint.

17. Defendants admit the allegations in Paragraph 17 of the Complaint that Morales signed the Collateral Management Agreement on behalf of Commonwealth on November 9, 2007, and that said agreement addressed conflicts of interest that could arise. The remaining allegations in Paragraph 17 accurately quote language from the Collateral Management Agreement, but the inclusion of those quotes in Paragraph 17 is misleading to the extent Plaintiff implies that such language described the duties owed by Commonwealth prior to or at the

closing of the CDO on November 9, 2007. The duties of Collateral Manager were limited by the language of the Collateral Management Agreement to transactions post-dating the closing.

18.     Defendants admit the allegations in Paragraph 18 of the Complaint that they were fiduciaries to the Core Funds, the CA Funds and Sand Spring III, and admit that after November 9, 2007, Commonwealth was a fiduciary to Collybus. Morales was never a fiduciary to Collybus and Commonwealth was not a fiduciary to Collybus until after the CDO closed. Defendants deny the remaining allegations in Paragraph 18.

19.     Defendants admit the allegations in Paragraph 19 of the Complaint that the CA Funds and the Core Funds were invested in RMBS, among other securities. In 2007 bond rating agencies downgraded a number of subprime RMBS of more recent vintage, *i.e.*, the downgraded securities came primarily from 2005 and 2006 securitizations. Commonwealth clients did <u>not</u> sustain heavy investment losses in the summer of 2007 because the RMBS held by such clients were primarily of older vintage, had not defaulted, and were not the subject of the mid-2007 downgrades. To the extent inconsistent herewith, Defendants deny the remaining allegations of Paragraph 19 of the Complaint.

20.     Defendants deny the allegations in Paragraph 20 of the Complaint, except that Commonwealth-advised funds sold RMBS to Collybus at prices agreed upon in arms-length transactions with the Investment Bank responsible for structuring Collybus and at prices reviewed and accepted by the rating agencies.

21.     Defendants deny the allegations in Paragraph 21 of the Complaint, except they admit that the rating agencies lowered their ratings on 498 RMBS, almost all of which were from recent-vintage securitizations. Defendants further deny that this action by the rating agencies sent prices of all RMBS downward.

22.	Defendants deny the allegations in Paragraph 22 of the Complaint because they are misleading. Commonwealth never directed Collybus to buy any securities at any price. E-mails were exchanged between Morales and Commonwealth employees listing broker-dealer and pricing services marks, and while such lists were forwarded to the Investment Bank. Commonwealth proposed that one such list form the basis for the prices at which Commonwealth would sell securities to Collybus. The parties later agreed to change some of the prices. At no time did Commonwealth or Morales "direct" Collybus, the Investment Bank, or the rating agencies to accept any particular price.

23.	Defendants admit the allegations in Paragraph 23 of the Complaint.

24.	Defendants deny the allegations in Paragraph 24 of the Complaint.

25.	Defendants deny the allegations in Paragraph 25 of the Complaint.

26.	Defendants admit the allegations in Paragraph 26 of the Complaint.

27.	Defendants admit the allegations in Paragraph 27 of the Complaint that a large investor invested about $129 million of its clients' money in Sand Spring III between August and October 2007. Defendants deny the remaining allegations in Paragraph 27.

28.	Defendants admit the allegations in Paragraph 28 of the Complaint that Sand Spring III invested about $49 million in the Equity tranche of Collybus and that, at the time of the investment, it represented about 35% of Sand Spring III's portfolio. Defendants deny the remaining allegations in Paragraph 28.

29.	Defendants admit the allegations in Paragraph 29 of the Complaint that in the telephone call the managing director complained about the size of the Collybus investment and that Morales agreed to try to reduce it. The Defendants deny the remaining allegations in Paragraph 29.

635210.1

30. Defendants admit the allegations in Paragraph 30 of the Complaint.

31. Defendants deny the allegations in Paragraph 31 of the Complaint that there was cross-trading. They admit the remaining allegations in Paragraph 31.

32. Defendants deny the allegations in Paragraph 32 of the Complaint for lack of information sufficient to form a belief therein, although Defendants admit that Paragraph 32 accurately quotes Commonwealth's ADV.

33. Defendants admit the allegations in Paragraph 33 of the Complaint.

34. Defendants admit the allegations in Paragraph 34 of the Complaint that the larger investor made additional investments and that Commonwealth received management fees based upon the amount of assets under management. Defendants deny the remaining allegations in Paragraph 34.

35. Defendants admit the allegations in Paragraph 35 of the Complaint that Sand Spring III's investment in Collybus increased, but Defendants deny the remaining allegations in Paragraph 35.

36. Defendants deny the allegations in Paragraph 36 of the Complaint, except they admit that 22% of Sand Spring III's portfolio consisted of Collybus on May 9, 2008.

37. Defendants admit that Morales gave a Power Point presentation, but they deny the remaining allegations in Paragraph 37 of the Complaint.

38. Defendants admit the allegations in Paragraph 38 of the Complaint.

39. Defendants admit the allegations in Paragraph 39 of the Complaint.

40. Defendants admit the allegations in Paragraph 40 of the Complaint.

635210.1

41. Defendants deny the allegations in Paragraph 41 of the Complaint for lack of information sufficient to form a belief therein, although Defendants admit that valuations of an investor's portfolio is important to most investors.

42. Defendants deny the allegations in Paragraph 42 of the Complaint.

43. Defendants aver they learned after-the-fact that the administrator was not valuing or independently confirming values of assets held by the funds, in breach of the administrator's contract with Commonwealth and contrary to Commonwealth's understanding of the administrator's duties. Defendants deny the remaining allegations in Paragraph 43.

44. Defendants admit the allegations in Paragraph 44 of the Complaint that the Trustee reports on various dates showed that one or more tranches of Collybus had failed the over-collaterization tests. Defendants deny the remaining allegations of Paragraph 44.

45. Defendants admit the allegations in Paragraph 45 of the Complaint that discussions and negotiations occurred between Commonwealth and the Investment Bank regarding the purchase of the A-2 tranche at a discount from par, that the Commonwealth-managed funds ultimately purchased the A-2 tranche at a price of 72.75, and that the par value of the E tranche held by Sand Spring III in May 2008 was about $33 million. The Defendants deny the remaining allegations in Paragraph 45.

46. Defendants admit the allegations in Paragraph 46 of the Complaint.

47. Defendants admit the allegations in Paragraph 47 of the Complaint.

48. Defendants admit the allegations in Paragraph 48 of the Complaint.

49. Defendants deny the allegations in Paragraph 49 of the Complaint.

50. Defendants admit the allegations in Paragraph 50 of the Complaint that Commonwealth received a questionnaire from the large investor asking, among other things,

whether Commonwealth had a valuation committee, which Commonwealth truthfully answered. The Defendants deny the remaining allegations in Paragraph 50.

51. Defendants admit the allegations in Paragraph 51 of the Complaint that Commonwealth sent the large investor a copy of valuation committee minutes, but Defendants deny the remaining allegations in Paragraph 51.

52. Defendants admit the allegations in Paragraph 52 of the Complaint that NAV reports issued by the administrator valued the Collybus notes at between 100% and 102% of par in the spring of 2008. Defendants deny the remaining allegations in Paragraph 52.

53. Defendants deny the allegations in Paragraph 53 of the Complaint.

54. Defendants admit the allegations in Paragraph 54 of the Complaint.

55. Defendants admit the allegations in Paragraph 55 of the Complaint that Commonwealth entered an agreement with the Investment Bank for the purchase of the A-2 tranche, but Defendants deny the remaining allegations in Paragraph 55.

56. Defendants deny the allegations in Paragraph 56 of the Complaint for lack of information sufficient to form a belief therein.

57. Defendants admit that Paragraph 57 accurately quotes Commonwealth's ADVs and Commonwealth's Compliance Manual, which Commonwealth provided to the large investor. Defendants deny the remaining allegations in Paragraph 57.

58. Defendants deny the allegations in Paragraph 58 of the Complaint for lack of information sufficient to form a belief therein.

59. Defendants admit the allegations in Paragraph 59 of the Complaint that they received an e-mail listing bonds sold by the Core Funds, prices at which they were sold, costs of

the funds, and the loss suffered on those sales. Defendants deny the remaining allegations in Paragraph 59.

60. Defendants admit the allegations in Paragraph 60 of the Complaint.

61. Defendants deny the allegations in Paragraph 61 of the Complaint that the trades were cross trades. Defendants deny the trades "concerned" the prime broker, for lack of information sufficient to form a belief therein. Defendants admit the remaining allegations in Paragraph 61.

62. Defendants admit the allegations in Paragraph 62 of the Complaint that another officer signed the letter, but Defendants deny the remaining allegations in Paragraph 62.

63. Defendants admit the allegations in Paragraph 63 of the Complaint that some investors redeemed in July and August 2008, but Defendants deny the remaining allegations in Paragraph 63.

64. Defendants admit the allegations in Paragraph 64 of the Complaint that a profit and loss statement was sent to the large investor, but Defendants deny they intended to mislead or in fact misled the large investor.

65. Defendants admit the allegations in Paragraph 65 of the Complaint that they agreed to buy the A-2 tranche notes at 72.75. Defendants deny the remaining allegations in Paragraph 65.

66. Defendants admit the allegations in Paragraph 66 of the Complaint that they retained an independent valuation firm and that the Commonwealth-managed funds bought the A-2 notes in June 208. Defendants deny the remaining allegations in Paragraph 66.

67. Defendants admit the allegations in Paragraph 67 of the Complaint that the valuation firm valued the A-2 notes at 88. Defendants deny the remaining allegations in Paragraph 67.

68. Defendants admit the allegations in Paragraph 68 of the Complaint that a telephone conversation took place, but Defendants deny the remaining allegations in Paragraph 68 as written.

69. Defendants admit the allegations in Paragraph 69 of the Complaint that the large investor obtained monthly holding reports from the administrator. Defendants deny the remaining allegations in Paragraph 69.

70. Defendants admit the allegations in Paragraph 70 of the Complaint that Sand Spring III's NAV experienced an additional decline -- not because of any trades that were reversed, but because the trades and other assets were re-priced or re-valued. Defendants also admit the large investor requested redemption. Defendants deny the remaining allegations in Paragraph 70.

71. Defendants repeat their responses to Paragraphs 1 through 70 of the Complaint.

72. Defendants deny the allegations in Paragraph 72 of the Complaint.

73. Defendants deny the allegations in Paragraph 73 of the Complaint.

74. Defendants repeat their responses to Paragraphs 1 through 73 of the Complaint.

75. Defendants deny the allegations in Paragraph 75 of the Complaint.

76. Defendants deny the allegations in Paragraph 76 of the Complaint.

77. Defendants deny the allegations in Paragraph 77 of the Complaint.

78. Defendants repeat their responses to Paragraphs 1 through 77 of the Complaint.

79. Defendants deny the allegations in Paragraph 79 of the Complaint.

635210.1

80. Defendants deny the allegations in Paragraph 80 of the Complaint.

81. Defendants deny the allegations in Paragraph 81 of the Complaint.

82. Defendants deny the allegations in Paragraph 82 of the Complaint.

83. Defendants repeat their responses to Paragraphs 1 through 82 of the Complaint.

84. Defendants admit the allegations in Paragraph 84 of the Complaint.

85. Defendants deny the allegations in Paragraph 85 of the Complaint.

86. Defendants deny the allegations in Paragraph 86 of the Complaint.

87. Defendants deny the allegations in Paragraph 87 of the Complaint.

88. Defendants repeat their responses to Paragraphs 1 through 87 of the Complaint.

89. Defendants admit the allegations in Paragraph 89 of the Complaint.

90. Defendants deny the allegations in Paragraph 90 of the Complaint.

91. Defendants deny the allegations in Paragraph 91 of the Complaint.

92. Defendants deny the allegations in Paragraph 92 of the Complaint.

93. Defendants repeat their responses to Paragraphs 1 through 92 of the Complaint.

94. Defendants admit the allegations in Paragraph 94 of the Complaint.

95. Defendants admit the allegations in Paragraph 95 of the Complaint.

96. Defendants deny the allegations in Paragraph 96 of the Complaint.

97. Defendants deny the allegations in Paragraph 97 of the Complaint.

98. Defendants deny the allegations in Paragraph 98 of the Complaint.

99. Defendants repeat their responses to Paragraphs 1 through 98 of the Complaint.

100. Defendants admit the allegations in Paragraph 100 of the Complaint.

101. Defendants deny the allegations in Paragraph 101 of the Complaint.

102. Defendants deny the allegations in Paragraph 102 of the Complaint.

635210.1

103. Defendants deny the allegations in Paragraph 103 of the Complaint.

104. Defendants repeat their responses to Paragraphs 1 through 103 of the Complaint.

105. Defendants admit the allegations in Paragraph 105 of the Complaint.

106. Defendants admit the allegations in Paragraph 106 of the Complaint.

107. Defendants deny the allegations in Paragraph 107 of the Complaint.

108. Defendants deny the allegations in Paragraph 108 of the Complaint.

109. Defendants deny the allegations in Paragraph 109 of the Complaint.

110. Defendants repeat their responses to Paragraphs 1 through 109 of the Complaint.

111. Defendants deny the allegations in Paragraph 111 of the Complaint.

112. Defendants deny the allegations in Paragraph 112 of the Complaint.

### C. JURY TRIAL

Defendants demand trial by jury of all issues so triable.

**WHEREFORE**, Defendants prays that judgment be entered in favor of Defendants and against Plaintiff, dismissing with prejudice Plaintiff's Complaint and all claims for relief therein, at Plaintiff's cost.

>Respectfully submitted,
>
>**TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P.**
>
>By: **s/ Fredrick R. Tulley**
>   **Fredrick R. Tulley, Bar # 7534**
>   **Eugene R. Groves, Bar # 6358**
>   **Elizabeth Adams, Bar # 33703**
>   **451 Florida Street, 8th Floor (70801)**
>   **P. O. Box 2471**
>   **Baton Rouge, LA 70821**
>   **Telephone:  (225) 387-3221**
>   **Fax:  (225) 346-8049**
>
>**ATTORNEYS FOR COMMMONWEALTH ADVISORS, INC. AND WALTER A. MORALES**

## CERTIFICATE

I hereby certify that on March 15, 2013, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of filing will be sent by operation of the court's electronic filing system to:

John J. Gaupp
Assistant United States Attorney
john.gaupp@usdoj.gov

Matthew A. Rossi
Securities and Exchange Commission
rossim@sec.gov

>           s/ Fredrick R. Tulley
>               Fredrick R. Tulley