UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


U.S. SECURITIES AND EXCHANGE
COMMISSION

VERSUS

COMMONWEALTH ADVISORS, INC.
AND WALTER A. MORALES

CIVIL ACTION

NUMBER 12-700-JWD-SCR

### RULING ON PLAINTIFF'S MOTION TO COMPEL

Before the court is the Plaintiff's Second Motion to Compel filed by plaintiff U.S. Securities and Exchange Commission.  Record document number 86.  The motion is opposed.[1]

All of the parties evidentiary submissions and arguments have been considered.  All of the plaintiff's evidence and arguments are persuasive.

The district judge's Ruling and Order required that by December 18, 2014 the defendants "submit to the Plaintiff a revised privilege log that is in compliance with Fed.r.Civ.P. 26(b)(5)(A) and must produce to Plaintiff all documents for which the attorney-client privilege has been waived by the assertion of the advice-of-counsel defense."[2]  Defendants timely provided the plaintiff with revised privilege logs.[3]  Defendants also produced documents, but

---

[1] Record document number 91.

[2] Record document number 77, p. 1.

[3] The privilege logs are record document numbers 86-3 (Exhibit
(continued...)

as explained below at least some of that production was short-lived.

Plaintiff argued that the defendants determined the scope of their waiver of the attorney-client privilege by how they asserted the advice-of-counsel defense. Specifically, the defendants asserted that they relied on the advice of counsel "with respect to acts or transactions which are the basis for this case," and then go on to specify the subjects as to which they contend they received advice.[4] A comparison of those subjects with the descriptions on the defendants' privilege logs shows that the defendants continue to withhold documents within the scope of their waiver.

For example, the Exhibit F log includes these documents:

KLG-CWA-110850red, described as "advice re Crestline request for information";

KLG-CWA-11047, described as "advice sought re giving calculation sheet to Crestline";

KLG-CWA-11834, described as "advice re giving spreadsheets to Crestline;" and,

_____

[3](...continued)
A, 70 pages), 86-4 (Exhibit B, 15 pages); 86-5 (Exhibit C, 15 pages), 86-7 (Exhibit E, 205 pages); and 86-8 (Exhibit F, 438 pages).

[4] Record document number 57-3, Exhibit A, Walter Morales' Answers to Second Set of Interrogatories of Plaintiff, Answer to Interrogatory No. 11

KLG-CWA-007617, described as "advice sought re disclaimer for

monthly reports to Crestline."[5]

Yet, the defendants asserted the advice-of-counsel defense "as

to what disclosures needed to be given as to re-pricing and June

trades and when those disclosures should be given."[6]  Crestline was

a large investor - the largest according to the plaintiff - which

was seeking information, i.e. "disclosures," from Commonwealth.

These withheld documents, as well as those similarly described,

---

[5] Record document number 86-2, Declaration of David Williams
in Support of Second Motion to Compel ("Williams Declaration"), pp.
3-4, ¶ 12 .  Williams references 15 documents by Bates number as
examples.  *Id.* at 3-5, ¶¶ 11-14.  Only two documents are attached
to the Williams Declaration, record document numbers 86-12 and 86-
13.  To avoid having to file this ruling under seal, the
information in these documents is not included in the ruling.
    Five specific documents are cited in the declaration, and
Williams stated that there is a substantial volume of such
documents on the Exhibit F log.  Williams Declaration, p. 13, ¶ 12.
A search of the Exhibit F log disclosed 209 documents referencing
Crestline in the document summary.  Some of the document summaries
are the same or very similar to the those cite by Williams.  Only
one document is dated before the June trades.
    The Exhibit E log contains 53 documents referencing Crestline
in the document summary.  Some have descriptions similar to those
in the Exhibit F log.  For example, CW-II-06688907:  "Discussion re
disclosure for Crestline reports, redemption request."  That log
also contains six references to defendant Commonwealth's third-
party administrator, Spectrum.  The documents are described as
"Email ...," "email ...," or "Email chain ...," with "(No mention
of waived topics)."  Only one of these, CW-II-06600908, indicates
a redaction.
    Many documents listed on the Exhibit E log were produced in a
redacted form, e.g., CW-II-06622755, CW-II-06622917, and CW-II-
06629030.  There are 173 redacted documents identified on the
Exhibit E log.  Of those, 12 also reference Crestline.

[6] Record document number 57-3, Exhibit A, p. 6 (page 7 of the
Answer to Interrogatory No. 11).

3

come within the scope of the defendants' attorney-client privilege waiver and should have been produced.

Defendants also waived their attorney-client privilege as to advice and communications with counsel regarding the same subjects, but received or made for the purpose of responding to the SEC investigation. As the plaintiff correctly explained, an advice-of-counsel waiver is an intentional waiver and it applies to the subject matter of the communication.[7] All of the conditions for an attorney-client communication waiver required under Rule 502(a), Fed.R.Evid., are present here: (1) the waiver is intentional; (2) the disclosed and undisclosed communications and information concern the same subject matter; and, (3) the communications ought in fairness be considered together. Therefore, all communications and advice of counsel on the same subjects[8] that occurred in the course of the SEC investigation should have been produced. Defendants' narrow, cabined interpretation of the subjects and scope of their waiver is unfair to the plaintiff in the circumstance of this case.

Defendants' waiver also entitles the plaintiff to discover documents and information reflecting counsel's advice as to the subjects of the waiver even though the defendants may assert they

---

[7] Record document number 86-1, supporting memorandum, pp 8 - 9, citing cases.

[8] Record document number 57-3, Answer to Interrogatory No. 11, describes those subjects.

ultimately did not rely on that advice.  Such discovery includes documents not actually provided to the defendants.  As to the latter category, such documents would otherwise be protected attorney work product.  Some courts have limited discovery of attorney work product when there has been an attorney-client waiver to factual, non-opinion work product on the same subject matter.[9]  Here, however, the distinction has no practical application.  Defendants either did not identify documents withheld as opinion work product, or where attorney work product was listed as the privilege asserted, they did not differentiate between documents containing opinion work product and documents containing factual work product.[10]

---

[9] Record document number 86-1, supporting memorandum, p. 11-12, and n. 11 (citing cases).

[10] Record document number 86-3, Exhibit A, has three references to "attorney work product" as the privilege asserted. The log indicates whether a document is redacted, but unlike other logs does not indicate whether a privilege is waived.

Record document number 86-4, Exhibit B, has 15 references to "Attorney Work Product" as the privilege asserted.  Each reference is either  "Email reflecting provision of information about SEC to counsel to facilitate the rendering of legal advice," or "Email chain reflecting provision of information about SEC to counsel to facilitate the rendering of legal advice."  As to all of these documents, both attorney-client and work product are listed as the privilege.  As to most of these dual privilege documents, the log states "Y[es]" in the "Privilege waived?" column; as to four documents, the column is blank.  It is not clear whether "Y" is intended to signify waiver of the attorney-client privilege, the work product privilege, or both.  If both, it is not clear why the document would still be listed in a privilege log.

Record document number 86-5, Exhibit C, has 47 references to "Attorney Work Product" in 44 documents.  Most are described as
(continued...)

Plaintiff also argued that the defendants waived the attorney-client privilege as to unidentified notes and other materials not disclosed on a privilege log.  The district judge's Ruling and Order required the defendants to produce all documents for which the attorney-client privilege has been waived.  Plaintiff asserted that on January 15, 2015, about a month after making their production pursuant to the Ruling and Order, the defendants disclosed handwritten notes, taken by an attorney at the  Morgan, Lewis law firm, of interviews with two Commonwealth employees.[11] These notes include information on the subjects of the defendants's waiver.  The notes were not previously produced but neither are they included on any privilege log produced by the defendants.  According to the cover letter transmitting the notes to counsel for the plaintiff, the notes were disclosed because the defendants may

---

[10](...continued)
"Email..." or "Email chain reflecting the provision of legal advice from  counsel  regarding"  "Cantor,"  "Collybus,"  "Kroll,"  or "Commonwealth."  As to all of these documents, both attorney-client and work product are listed as the privilege.  As to some of these dual privilege documents, the log states "Yes" in the "Privilege waived?" column; as to others, the column is blank.  Again, it is not  clear  whether  "Yes"  applies  to  just  the  attorney-client privilege, the work product privilege, or both.
Record document number 86-7, Exhibit E, has one reference to "attorney work product" as the privilege asserted.  The log indicates  whether  a  document  is  redacted,  but  not  whether  a privilege is waived.
Record document number 86-8, Exhibit  F, has no references to attorney work product.

[11] Record document number 86-10, Exhibit H.  The employees are identified by name in the cover letter.

use the notes to during depositions of one of the employees.[12] Nevertheless, the defendants contended that they are not waiving any attorney-client privilege or work product protection they may assert.[13]

Defendants argued that they disclosed the existence of these notes in a June 17, 2014 email.[14] Defendants asserted that "[t]o the extent such documents do not appear on one of Commonwealth's privilege logs, their omission is due to the fact that such documents are supposed to appear on *Morgan Lewis'* privilege log."[15] Defendants argued that these are recent (as of February 2015) circumstances and are not the proper basis for a motion to compel.

What this scenario suggests to the plaintiff is that the defendants may be withholding additional relevant, discoverable documents - but not disclosing them on any privilege log - until the defendants decide that using the documents is to their advantage. The result, plaintiff essentially contends, is that documents unhelpful to the defendants will simply not be disclosed, much less produced.

As to the specific documents that the defendants produced on

---

[12] The cover letter identifies the employee by name.

[13] *Id.*

[14] Record document number 91-1, opposition memorandum, pp. 14-15, citing record document number 91-12, Exhibit J.

[15] Record document number 91-1, p. 15 (Italics in original).

January 15, 2015, when they came into the defendants' possession in July 2014 the defendants asserted work product protection and did not produce them to the plaintiff.  These documents, having been withheld by the defendants, should have been included in one of the defendants' privilege logs.  That some other entity also has the documents and should have disclosed them in its privilege log does not relieve the defendants of doing so too.

Plaintiff attached to the Williams Declaration two documents produced by the defendants.[16]  As Williams explained in a declaration filed in support of the plaintiff's opposition to the defendants Motion for Sanctions, the plaintiff was provided with a production that did not redact purportedly privileged information from the original native-format files or from the searchable text metadata that was used to identify and locate specific documents.[17]  As Williams also explained, only after a document was identified and located was the image of the document (the associated .tiff file) examined.  Only the image revealed the redaction.[18]  Based on the examination of the metadata for these two documents, and a comparison of the metadata with the image file, the plaintiff believes that additional responsive material may be found on other

---

[16] Record document numbers 86-12, Exhibit J, and 86-13, Exhibit K.

[17] Record document number 109-1, Declaration of David Williams in Support of Opposition to Motion for Sanctions, pp. 2-3, ¶¶ 8-10.

[18] *Id.* at 3, ¶ 11.

redacted documents as well.

The privilege log entry for the first document states, in part, "(No mention of waived topics)."[19] But this is incorrect - communication with counsel regarding the SEC investigation comes within the scope of the defendants' waiver. Review of the image confirms the plaintiff's contention.[20]

The second document, CW-II-06690262, also includes the statement "(No mention of waived topics)." Again, this is incorrect. Contrary to the basis for redacting the document stated in the privilege log, the document includes information on subjects identified by the defendants as to which they relied on advice of counsel. Communications regarding what Commonwealth should do regarding the June 2008 trades, including what disclosures needed to be given to investors as to re-pricing the June trades and when those disclosures needed to be given, are within the scope of their waiver.[21]

Defendants characterized the plaintiff's revelation as "reconstructing the redacted portions of documents from metadata that was inadvertently included by a third-party vendor – a vendor

---

[19] Record document number 86-7, Exhibit E, p. 32, CW-II-06603111.

[20] Record document number 86-12, Exhibit J, p. 3 (metadata revealing full text of the email).

[21] Record document number 57-3, Exhibit A, Answer to Interrogatory No. 11, pp. 6-7, ¶ 3.

made necessary by the SEC's demand that all files be produced in a certain electronic format."[22]

Defendants' characterization is inapt.  Plaintiff did not reconstruct the two documents; rather, the defendants provided the full text to the plaintiff.  Plaintiff cited two documents, but that does not mean there are no more.  As explained in the Ruling on Motion for Sanctions,[23] the day after the Plaintiff's Second Motion to Compel was filed the defendants advised the plaintiff that there was a problem with their production.  Plaintiff promptly agreed to not review all of the materials the defendants produced and deleted all of the materials identified by the defendants as having been incorrectly produced.  These two documents serve to confirm the defendants' incorrect interpretation and application of their privilege waiver.

Additionally, by demanding that the plaintiff delete all of the incorrectly produced materials, which the plaintiff agreed to do, the defendants effectively failed to comply with the Ruling and Order.  Defendants' otherwise timely production cannot be considered so when they demand a significant part of it - in terms of both volume and content - not be examined and also be deleted.

The court finds the defendants' privilege logs fail to comply with Rule 26(b)(5)(A), because they fail to "describe the nature of

---

[22] Record document number 91-1, p. 5.

[23] Record document number 128.

10

the documents ... in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claims."   Plaintiff has shown that the statement in a document description that there is "(No mention of waived topics)" is not trustworthy.   Defendants did not timely produce all documents that became discoverable as a consequence of their attorney-client privilege waiver.   And they have improperly redacted parts of documents that include communications on the subjects of their waiver without any notice to the plaintiff that they did so.   The only way to confirm, with a reasonable degree of confidence, which documents were properly withheld or redacted is to examine every document withheld and every redacted document they produced.

In their memorandum in opposition to this motion[24] and the memorandum in opposition to the defendants' Motion for Sanctions,[25] the plaintiff argued that the court should again find that the plaintiffs waived their attorney-client privilege by the manner in which they made their production to comply with the district judge's Ruling and Order.   The Ruling on Motion for Sanctions noted the parties arguments but did not address them specifically and

---

[24] Record document numbers 86-1, p. 17 ("The Commission submits that an across-the-board finding of waiver is the only reliable means of providing the Commission the materials to which it is fairly entitled."

[25] Record document number 109.

11

instead deferred that issue for consideration in connection with this motion.[26]

In that ruling, the court found that the defendants failed "to take reasonable steps to timely discover that they produced supposedly privileged documents and information, which resulted in the plaintiff's discovery of arguably improperly redacted documents that were subsequently provided to the court," i.e., Exhibits J and K. The court found that "the defendants did not review their production before delivering it to the plaintiff[;] [t]hey left that up to a vendor." "Nor is there any evidence or information to support finding that the defendants reviewed their production during the approximately six weeks before the Plaintiff's Second Motion to Compel was filed." Those findings are underscored by the additional findings in this ruling.

In his Ruling and Order the district judge did not disagree with the determination that defendants' privilege logs (provided up to that time) were wholly inadequate to sustain their assertion of the attorney-client privilege.[27] Nor did he disagree with the finding that their "wholly deficient privilege logs make it impossible to reliably determine the true subject matter of the

---

[26] Record document number 128, pp. 5-6.

[27] Record document number 77, p. 3.

withheld documents."[28]  He disagreed with the remedy: waiver of the privilege and production of the withheld documents.[29]  Instead, he required the defendants to "submit to the Plaintiff a revised privilege log that is in compliance with Fed.r.Civ.P. 26(b)(5)(A) and must produce to Plaintiff all documents for which the attorney-client privilege has been waived by the assertion of the advice-of-counsel defense."[30]

Defendants revised privilege logs are, overall, now **less** reliable than the ones they previously produced because they include insufficient and sometimes misleading document descriptions.  Plaintiff has persuasively shown that the defendants improperly redacted at least two specific documents (Exhibits J and K), and there is good cause to believe there are more improperly redacted documents (particularly, but not exclusively, those referencing Crestline, Spectrum and the SEC investigation).

The current circumstances support finding that the defendants waived their attorney-client privilege and should be required to produce all previously-withheld documents.[31]  They failed to take

---

[28] *Id.* at 4, quoting the Ruling on Motion to Compel, record document number 59, p. 13.

[29] *Id.* at 4.

[30] *Id.* at 1.

[31] When determining whether an inadvertent disclosure of privileged materials results in a waiver of the privilege, the court considers all of the circumstances.  *Alldred v. City of* (continued...)

any reasonable steps to prevent the disclosure of claimed still-privileged information by the manner of their December production. Only after the plaintiff brought it to their attention in this motion, filed more than six weeks later, did they do anything about it. Defendants provided deficient and sometimes misleading revised privilege logs which, overall, are not reliable. Defendants knowingly redacted materials which are subjects of their advice-of-counsel attorney-client privilege waiver, and intentionally did not produce one document until they determined it was in their interest to do so. And lastly, but importantly, in these circumstance it is simply unfair to the plaintiff to allow the defendants to assert a broad advice-of-counsel defense, interpret it narrowly, and then

---

[31](...continued)
*Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993)(case-by-case "analysis serves the purpose of the attorney client privilege, the protection of communications which the client fully intended would remain confidential, yet at the same time will not relieve those claiming the privilege of the consequences of their carelessness if the circumstances surrounding the disclosure do not clearly demonstrate that continued protection is warranted"). The circumstances include: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Id.* at 1433. In applying *Alldred* in other cases, courts have discussed other circumstances specific to those cases, e.g., whether the disclosure was complete, whether the disclosure was to an attorney or another person such as an expert witness, whether the disclosure was in connection with an *in camera* review, whether the disclosed material has already been used by the recipient and how the materials were used, whether there was a way to "un-ring the bell," and whether a limited waiver is feasible, appropriate and fair to the parties. Because the circumstance of each will naturally differ, no single case is likely to be just like the one before the court.

based on their narrow interpretation withhold information and documents relevant to that defense.

Plaintiff sought an order compelling the defendants "to produce responsive materials relevant to their advice of counsel defense immediately."[32]  While that is simple enough to put in a ruling, confirming the defendants' compliance will be virtually impossible without examining the native-format file, the associated metadata, and the .tiff image file for every document withheld or redacted.  Based on the findings above, the plaintiff is entitled to the production all previously withheld or redacted documents.[33]

Accordingly, Plaintiff's Second Motion to Compel is granted. Defendants shall produce to the plaintiff, within 21 days, all documents withheld on the basis of attorney-client privilege, whether solely or in part.

Baton Rouge, Louisiana, September 28, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[32] Record document number 86-1, p. 18.

[33] As an alternative, the court could appoint a special master pursuant to Rule 53, Fed.R.Civ.P., to examining the native-format file, the associated metadata, and the image for every document withheld or redacted, or at least a subset of those documents, and identify those which were improperly withheld or redacted.  Given that the appointment of a special master is the result of the defendants' conduct, the full cost should be borne by them.