UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                                        CIVIL ACTION

                    Plaintiff,

                                        No. 3:12-00700-JWD-EWD

VERSUS


COMMONWEALTH ADVISORS, INC.,
and WALTER A. MORALES,

                    Defendants.

**RULING ON DEFENDANTS' MOTION TO AMEND ORDER**

**I.**      **INTRODUCTION**

    Before the Court is the Defendants' Motion to Amend Order ("Motion to Amend"), (Doc. 141), filed by Commonwealth Advisors, Inc. ("Commonwealth") and Mr. Walter A. Morales ("Morales") (collectively, "Defendants"). In counter, the United States Securities and Exchange Commission ("SEC" or "Plaintiff") has submitted the Memorandum of Law in Opposition to Defendants' Motion to Amend Order ("Opposition"), (Doc. 182.) To the contentions advanced therein, Defendants have responded with the Reply Memorandum in Support of Motion to Amend Order ("Reply"), (Doc. 188). Only the latest discovery-related controversy between the

Defendants and Plaintiff (collectively, "Parties"),[1] the Motion to Amend, asks that this Court's prior order of December 16, 2015, ("Relevant Order"), be corrected due to its ambiguity and reversed in full due to this Court's application of an incorrect standard of review. In essence, this request implicates the standards for both a ruling's reconsideration and for a district court's review of a magistrate judge's non-dispositive order, as stated in and implied into the Federal Rules of Civil Procedure[2] and effectively argues for the same result that the Defendants first sought in February 2, 2015, (Doc. 86): a judicial order preventing the release of certain documents, ones classified as "privileged" or as "work product" by Defendants pursuant to Rule 26[3] and as falling outside the waiver of that privilege effectuated by Defendants' assertion of the advice-of-counsel defense, despite an order so mandating that was issued by the assigned United States Magistrate Judge ("MJ").

Briefly put, this Court disagrees with the Defendants' construction of law and understanding of their own duties. Once before, the now-retired MJ[4] found that the Defendants

---

[1] Discovery has become the preeminent battleground in modern litigation, perhaps eclipsing the rare trial. *See, e.g.*, *Dahl v. City of Huntington Beach*, 84 F.3d 363, 364 (9th Cir. 1996); Francis E. McGovern & E. Allan Lind, *The Discovery Survey*, 51 LAW & CONTEMP. PROBS. 41, 41 (1988) ("Formal discovery under the Federal Rules of Civil Procedure is one of the most abused and obfuscated aspects of our litigation practice."). Reality, then, has given lie to an old vision. *Cf. Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S. Ct. 845, 851, 15 L. Ed. 2d 807 (1966) ("The basic purpose of the . . . Rules is to administer justice through fair trials . . . . These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court.").

[2] In this order, any and all references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[3] Whether called "work product" or "attorney client," the same kind of log is required. *See In re Grand Jury* Proceedings, 802 F.3d 57 (1st Cir. 2015). To wit, while the assertion of each necessitates a particular and distinct showing, both are often asserted in the same log, and a lack of specificity therein will forfeit either's protection under Rule 26.

[4] Upon the retirement of the Honorable Stephen C. Riedlinger, a new magistrate judge was appointed on March 2, 2016. As that appointment post-dates the relevant events, any reference to

had waived the attorney-client privilege by virtue of certain adjudicated failures, thereby granting Plaintiff's first Motion to Compel ("First Ruling"). Particularly, he did so due to the Defendants' assertion of this privilege by means of blanket boilerplate, consistent with the trend in modern federal jurisprudence of treating such broad claims as effectuating absolute and unconditional waivers of any relevant privilege and possible shield. Despite the First Ruling, wishing to provide Defendants' counsel with a chance to avoid the foreseeable consequences of their deliberate use of such vague and sweeping language in the face of such precedent, this Court reversed the MJ's decision ("Reversal"). Presented with this opportunity, a second bite at the same apple, Defendants submitted a new privilege log. Yet, while much was corrected, these privilege logs contained at least two factually incorrect entries. Noting this factual deficiency and emphasizing its implication—that Defendants' own records could not be trusted to accurately portray the contents of the documents withheld, whether properly or improperly, in spite of Defendants' receipt of a reprieve to which much law does not entitle them, *see infra* Part III.B— the MJ ordered a release of all documents conceivably encompassed by the asserted privilege in a case in which a protective order otherwise constricts the potential ramifications of such a release ("Second Ruling"), (Doc. 116). Put differently, having two opportunities to comply with their discovery obligations, Defendants have yet to do so with the kind of rigor compelled by Rules 1 and 26. So this Court concluded on December 16, 2015, after parsing the MJ's legal and factual analyses. .

---

the "MJ" in this order is to the now retired jurist, who monitored this case from March 4, 2013, (Doc. 11), through January 7, 2016, (Doc. 180). The currently assigned magistrate judge is the Honorable Daniel E. Knowles III, of the United States District Court for the Eastern District of Louisiana.

Having once more reviewed the Second Ruling upon the filing of the Motion to Amend, this Court reaches the same conclusion, finding the MJ's well-considered opinion neither "contrary to law" nor "clearly erroneous" when the full history of this litigation is unwound. By any fair measure, with ample support for his legal conclusions and factual deduction evident in much jurisprudence, the MJ applied the correct legal standard and weighed the facts reasonably when he assessed one of the Rules' lesser sanctions[5] against a recalcitrant party. For these reasons, as more fully explained below, this Court **DENIES** the Defendants' Motion to Amend Order.[6]

## II.   BACKGROUND

### A.   Factual and Procedural History

This case's history has been documented before. (Doc. 168 at 1–3.) In brief, the SEC sued Defendants for an allegedly fraudulent scheme to hide investment losses and conceal the truth of those losses from investors. (Doc. 148 at 2; *see also, e.g.*, Doc. 1 ¶¶ 38–65; Doc. 168 at 1–2.) Allegedly, "shortly before the original cutoff date for fact discovery . . ., Defendants formally asserted an advice-of-counsel defense," later submitting "a nearly four-page extended narrative describing their defense that spanned most, if not all, of the material allegations of this case." (Doc. 182 at 1; *see also* Doc. 57-2.) Beyond these bare details, only the most recent facts pertinent to the Parties' immediate controversy require summarization here.

---

[5] While the Defendants describe the waiver as a "severe" sanction, (Doc. 176-1 at 8), Rule 37 can be construed to authorize far harsher punishments.

[6] On March 31, 2016, this Court will issue two other orders clarifying the scope of the MJ's order and dealing with the possible appointment of a special master. This Ruling deals solely with the Motion to Amend as it relates to this Court's purported misapplication of the law's binding standard. *See infra* Part III.

On October 29, 2014, the MJ issued the First Ruling. (Doc. 59.) Focused upon a single issue—the Defendants' responsiveness to the Plaintiff's First Set of Interrogatories and First Request for Production of Documents, served on both Defendants, (*Id.* at 1–2)—the First Ruling granted the Plaintiff's first Motion to Compel, (Doc. 35), in part. (Doc. 59 at 14; *see also, e.g.*, Doc. 86-1 at 2–3.) Soon thereafter, this Court reversed that part of this First Ruling "holding that all Defendants waived their attorney-client privilege with respect to all documents for which that privilege was asserted and ordering production of those documents within seven days." (Doc. 77 at 1; *see also, e.g.*, Doc. 86-1 at 3; Doc. 131 at 1.) This Court gave the Defendants until December 18, 2014, to submit to the Plaintiff a revised privilege log compliant with Rule 26(b)(5)(A) and produce all documents for which the attorney-client privilege had been waived by the Defendants' assertion of the advice-of-counsel defense. (Doc. 77 at 1; *see also, e.g.*, Doc. 86-1 at 3; Doc. 131 at 1.) In its second paragraph, this same ruling and order expressly warned Defendants: "If the Court finds on or after December 18, 2014, that the privilege log descriptions fail to satisfy Rule 26(b)(5)(A) and/or that Defendants have withheld a document from production in bad faith, then the Court will deem the attorney-client privilege waived as to all such documents, and will consider other sanctions as are appropriate," (Doc. 77 at 1; *see also, e.g.*, Doc. 86-1 at 3; Doc. 168 at 4), thereby placing Defendants on notice of the possible imposition of punishments pursuant to Rules 26(5) and 37(b)(2) and as otherwise authorized by this Court's inherent authority for any future disobedience.[7] Crucially, at oral argument, the

---

[7] The latter power should normally only be employed when no precise basis for sanctions can be found in the Rules as written. *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 108 (3d Cir. 1999); *see also, e.g.*, *Natural Gas Pipeline Co. of Am. v. Energy Gathering*, 2 F.3d 1397, 1410 (5th Cir. 1993); *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 888 (5th Cir. 1968). Inherent powers and Rule 37 remain the dominant methods for ensuring compliance with the Rules' fifth title. *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 114 (3d Cir. 2011) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Acts.*, 278 F.3d 175, 189 (3d Cir. 2002)).

Defendants averred that it would take them no more than four weeks to submit more precise privilege logs; out of an abundance of caution, this Court gave Defendants five weeks to comply with the Rules' plain text. (Doc. 168 at 4.)

By this deadline, Defendants produced additional documents and five new logs. (Doc. 86-1 at 3.) This production prompted several objections from Plaintiff, as reflected in its Second Motion to Compel, (Doc. 86). First, "with respect to a significant number of entries," the revised logs purportedly still made "it difficult to discern whether the subject matter of the communication falls within the scope of Defendants' waiver" of the attorney-client privilege. (Doc. 86-1 at 3.) Moreover, the SEC contended that the "even the descriptions now provided by Defendants make clear that they *continue* to withhold materials clearly within the scope of the waiver," taking "a cramped and narrow view of the scope of their waiver that excludes communications that plainly and clearly shed light on the subject matter now at issue." (*Id.* at 4 (emphasis in original).) As it maintained, there "appear[ed] to be materials within the scope of Defendants' waiver that Defendants have not identified *at all* on any privilege log." (*Id.* at 5 (emphasis in original).) As summarized in the conclusion to this second motion to compel, the Defendants' alleged failures numbered three: "Defendants continue to withhold materials that by their own descriptions fall within the scope of their waiver; are in possession of a substantial volume of responsive materials that they have yet to identify on any privilege log; and have in fact logged items in a manner that conceals that withheld materials are within the scope of their waiver." (*Id.* at 18.)

Finding "[a]ll of the [P]laintiff's evidence and arguments . . . persuasive," on September 29, 2015, the MJ issued the Second Ruling. (Doc. 131; *see also* Doc. 168 at 5–6.) In this Second Ruling, the MJ correctly characterized this Court's prior order as follows: "In his Ruling and

Order[,] the district judge did not disagree with the determination that [D]efendants' privilege logs . . . were wholly inadequate. . . . He disagreed with the remedy: waiver of the privilege and production of the withheld documents." (*Id.* at 12–13.) The new privilege logs, however, combed through with care, now struck him as "**less** reliable than the ones . . . [Defendants] previously produced because they include insufficient and sometimes misleading descriptions." (*Id.* at 13 (emphasis in original).) Indeed, by his reckoning, Plaintiff had "persuasively shown that the [D]efendants improperly redacted at least two specific documents." (*Id.*) This omission, in turn, provided "good cause to believe there are more improperly redacted documents," a conclusion from which a key finding sprung: "[T]he [D]efendants waived their attorney-client privilege and should be required to produce all previously withheld documents." (*Id.*)

In making this decision, the MJ explicitly recapitulated a litany of failures, including Defendants' failure to take "any reasonable steps to prevent the disclosure of claimed still-privileged information" and submission of "deficient and sometimes misleading revised privilege logs which, overall, are not reliable." (*Id.* at 14.) In these circumstances, so much having already been withheld, "it is simply unfair to the [P]laintiff to allow the [D]efendants to assert a broad advice-of-counsel defense, interpret it narrowly, and then based on their narrow interpretation withhold information and documents relevant to that defense." (*Id.* at 14–15.) Based on these multiple factors, the MJ ordered Defendants to produce "all documents withheld on the basis of the attorney-client privilege, whether solely or in part," (*Id.*), with one implicit temporal limitation.[8] Defendants promptly appealed. (Doc. 133.)

In the Relevant Order, this Court rejected the Defendants' arguments. (Doc. 168 at 6.) As this Court there observed, "[t]he Magistrate Judge has spent countless hours presiding over

---

[8] This limitations will be clarified in this order's concluding section. *See infra* Part IV.

the complex discovery disputes in this case and, based on his intense familiarity with both its facts and the Parties' legal posture, found an unacceptable mismatch between the true nature of the documents withheld and the rightful ambit of Commonwealth's remaining privilege." (*Id.*) His analysis "reasonable," this Court found the MJ to have utilized "the proper standard in a most reasonable manner, leaving this Court with no firm conviction that . . . mistakes had been committed." (*Id.*) The Relevant Order thereupon referred to the "clearly erroneous" touchstone instead of the "contrary to law" standard applicable to a magistrate judge's legal conclusion.[9]

### B.      Parties' Arguments

In relevant part, in the Motion to Amend, the Defendants ask the Court to reconsider the Relevant Order, as it "wrongfully gave deference to the Magistrate Judge's legal conclusion and wrongfully gave deference to the Magistrate Judge's application of the law to the case." (Doc. 176-1 at 4.) Three different arguments are made to support this conclusion. First, the Defendants maintain that this Court erred due to "its complete reliance upon the deferential standard of review applicable to findings of fact," and "to the extent that the Magistrate Judge's ruling is premised upon disputed legal conclusions, the Court must review any such conclusions *de novo*." (*Id.* at 5, 6.) Defendants point to four separate "legal conclusions": (1) "an advice-of-counsel privilege waiver extends indefinitely into the future"; (2) "a waiver of attorney-client privilege necessarily waives work-product protection"; (3) "a client can waive work product protection belonging to the attorney"; and (4) "Commonwealth diminished its privilege claims by inadvertently disclosing document metadata." (*Id.* at 6–7.) In its view, "[u]nless the Court

---

[9] As will be shown below, *see infra* Part III.B, the difference between these standards is a matter of degree and cannot bear the weight placed upon it by Defendants.

determines *de novo* that each of the duly-challenged legal conclusions underpinning the Magistrate Judge's ruling is correct, the Court cannot affirm the ruling." (*Id.* at 7.) Second, according to Defendants, the Second Ruling was inconsistent with an earlier ruling by the MJ as to privilege redactions in two documents, (*See* Doc. 182 at 12–13), and as the latter establishes the law of the case, this duo's consistency is a question of law that the Court must review *de novo*. (Doc. 176-1 at 7.) Third, the MJ had relied upon "a substantial, blatantly erroneous factual finding," for he ruled that the privilege logs provided may be improper for ostensibly excluding documents not then in Commonwealth's possession. (*Id.* at 8.) In sum, choosing to characterize the MJ's ruling as "the result of multiple subsidiary factual findings and legal conclusions," this Court erred "[b]y giving any deference to the Magistrate Judge's resolution of legal questions." (*Id.*) Defendants add that if this Court does "not agree with any one of the Magistrate Judge's challenged legal conclusions, the magistrate judge's findings . . . must fall and the evidence presented reevaluated." (*Id.* (alteration in original) (internal quotation marks omitted).)

The SEC contests every point, placing particular emphasis on this case's tortured history. (Doc. 182 at 2–3.) In general, the SEC describes Defendants' every assertion as "wrong." (*Id.* at 5.) Instead, [a]s an examination of each of the supposed legal conclusions identified by Defendants makes clear, the Magistrate Judge's ruling involved the application of established law in view of substantial findings of fact." (*Id.*) Thereafter, the SEC points out that "the application of the attorney-client privilege is a fact question; thus, the Second Ruling, affirmed by the Relevant Order, was actually based on this "number of specific factual findings concerning Defendants' privilege logs and litigation tactics." (*Id.* at 6, 7.) Precisely because Defendants' "deficient and misleading logs . . . made it impossible to determine . . . whether any of the documents that they continued to withhold fell within the scope of the attorney-client

privilege, if any, not waived by their assertion of a broad advice-of-counsel defense," the issue is more properly classified as "a factual determination subject to erroneous review." (*Id.* at 9 (internal quotation marks omitted).) The SEC maintains that the same can be rightly said about the MJ's work-product analyses. (*Id.* at 10–12.) Finally, the SEC questions the application of the law-of-the-case doctrine, stressing not only the inapplicability of this doctrine but also Defendants' failure to raise it before the MJ, as required for purposes of a motion for reconsideration. (*Id.* at 12–15.) In light of all these reasons, "there was no error, much less the sort of manifest mistake Defendants are required to show to prevail on a motion for reconsideration." (*Id.* at 5.)

## III.   DISCUSSION

### A.   Relevant Law

#### 1.   *Standard for Reconsideration*

Somewhat inexplicably, the Rules do not formally recognize the existence of motions for reconsideration. *E.g.*, *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991); *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). Despite this dearth, courts customarily consider such motions under either Rule 60(b) or Rule 59(e). *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991); *accord Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). Usually, any "postjudgment motion [is] . . . considered a Rule 59(e) motion where it involves 'reconsideration of matters properly encompassed in a decision on the merits.'" *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174, 109 S. Ct. 987, 990, 103 L. Ed. 2d 146 (1989) (quoting *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 451, 102 S. Ct. 1162, 1166, 71 L. Ed. 2d 325 (1982)). In accordance with

binding precedent, a motion for reconsideration is to be granted if any one of four circumstances is shown.[10]

Four bases are most often invoked. Reconsideration should take place if a court (1) is presented with newly discovered evidence or (2) has committed clear error. *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1064 n.1 (9th Cir. 2005) (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)); *see also Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) ("[A] motion [for reconsideration] is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."). Beyond these two, other grounds have been recognized. Hence, (3) if the initial decision was manifestly unjust, reconsideration is merited. *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)). Lastly, (4) change in controlling law can justify an order's modification. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Other "highly unusual circumstances" may do as well. *Sch. Dist. No. 1J* , 5 F.3d at 1263. Any such further inquiry must account for the fact that "a motion for reconsideration is an extraordinary remedy, to be used sparingly in the interest of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation and internal quotation marks omitted); *see also ICEE Distribs. Inc.*, 445 F.3d at 847–48; *cf. Messenger v. Anderson*, 225 U.S. 436, 444, 32 S. Ct. 739, 740, 56 L. Ed. 1152 (1912) (observing that "the practice of courts [is] generally to refuse to reopen what has been decided").

In utilizing this test, courts have repeatedly deemed invalid a number of different grounds often advanced. Such motions may not be used "to raise arguments or present evidence for the

---

[10] The same essential test is utilized whether Rule 59 or Rule 60 forms the basis for the motion.

first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also, e.g., Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473–75 (5th Cir. 1989) (commenting that Rule 59(e) motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence" (internal quotation marks omitted) (citing *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982))). Old arguments cannot be reconfigured, robed anew. *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316 & n.18 (S.D. Tex. 1994) (collecting cases). An "unhappy litigant" cannot enjoy "one additional chance to sway the judge." *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977). "Rule 59(e) requires something new and decisive, some blatant injustice, or an obvious error, not substantively identical assertions reechoed." *United States ex rel. Carter v. Bridgepoint Educ., Inc.*, No. 10-CV-01401-JLS (WVG), 2015 U.S. Dist. LEXIS 26423, at *16–17 (S.D. Cal. Feb. 20, 2015) (citing *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985); *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003); and *Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 965 (D. Ariz. 1992); *cf. Fogel v. Chestnut*t, 668 F.2d 100, 109 (2d Cir. 1981) ("The law of the case will be disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated." (internal quotation marks omitted))). Essentially, as case after case evidences, "[a] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled," *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005) (relying on *Nunes v. Ashcroft*, 375 F.3d 805, 807-08 (9th Cir. 2004), and *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000)), or to "repackage familiar arguments to test whether the Court will change its mind," *Brogdon*, 103 F. Supp. 2d at 1338.

**2.      *Standard for Review of Magistrate Judge's Non-Dispositive Orders***

A MJ may "hear and determine any [non-dispositive] trial matter pending before the Court." 28 U.S.C. § 636(b)(1)(A);[11] *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 970 (D.N.J. 1996); Tim A. Baker, *The Expanding Role of Magistrate Judges in the Federal Courts*, 39 VALPARAISO U. L. REV. 661, 675–76 (2005). Once referred, "the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision"; within fourteen days of being served with a copy, a party may file any objections. FED. R. CIV. P. 72(a); *see also Popular Imports v. Wong's Int'l*, 166 F.R.D. 276, 277 (E.D.N.Y. 1996). A judge of the relevant district court may then reconsider any such ruling on a "pretrial matter" where it is shown to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* FED. R. CIV. P. 72(a); *see also, e.g.*, *St. Paul Fire & Marine Ins. Co. v. SSA Gulf Terminals, Inc.*, No. 01-3063, 2002 U.S. Dist. LEXIS 20120, at *3–4, 2002 WL 31375611, at *2 (.ED La. Oct. 21, 2002); *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998). In general, pretrial discovery questions are deemed non-dispositive, subjecting them to review pursuant to these distinct standards. *See Commodity Futures Trading Comm'n v. Standard Forex*, 882 F. Supp. 40, 42 (E.D.N.Y. 1995).

A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum*, 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948). This standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case

---

[11] In this order, any and all reference to "Section []" or "§ []" is to this particular provision.

differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985); *see also, e.g.*, *Brinkley v. Comm'r*, 808 F.3d 657, 664–65 (5th Cir. 2015) (explicating the same standard). Thus, where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S. Ct. 177, 179, 94 L. Ed. 150 (1949); *see also, e.g.*, *United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2008) ("A factual finding is clearly erroneous if, although there is evidence to support it, after viewing the record we are left with the definite and firm conviction that a mistake has been committed." (internal quotation marks omitted)); *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) ("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole."). In a principle derived from the common law, the reviewing court may not consider evidence which was not before the MJ. *Haines v. Liggett Grp.*, 975 F.2d 81, 92–93 (3d Cir. 1992).

The second standard stated in § 636(b)(1)(A)—"contrary to law"—governs review of the MJ's legal conclusions. 28 U.S.C. § 636(b)(1)(A); *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014). As commonly construed, this standard authorizes plenary and thus de novo review, *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993), although "[f]rivolous, conclusive or general objections need not be considered by the district court," *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). An order violates this second criterion if it "misinterpreted or misapplied applicable law." *Cataldo v. Moses*, 361 F. Supp. 2d 420, 424 (D.N.J. 2004). "In other words, this Court may not disturb a magistrate judge's determination on a nondispositive matter merely because it could have been decided differently." *Martinez v. Pena*, No. 4:03-CV-915-Y, 2006 U.S. Dist. LEXIS 82057, at *5, 2006 WL 3289187, at *2 (N.D. Tex. Nov. 1, 2006). This standard has been frequently described as "extremely deferential." *Am.*

*Realty Trust, Inc. v. Matisse Capital Partners, L.L.C.*, No. 3:00-CV-1801-G, 2001 U.S. Dist. LEXIS 13241, at *4, 2001 WL 1029466, at *1 (N.D. Tex. Aug. 28, 2001) (citing to *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999)). Crucially, when legal conclusions are based on predicate questions of fact, these implicit questions are subject to the clearly erroneous, rather than the contrary to law, standard. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir. 1986). Moreover, more than one court has construed these standards identically, ruling that "[a] decision is clearly erroneous *or* contrary to law when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Herzog v. Johns Manville Prods. Corp.*, No. 02-1110 Section "L" (5), 2002 U.S. Dist. LEXIS 22187, at *4, 2002 WL 31556352, at *1 (E.D. La. Nov. 15, 2002) (emphasis added); *accord, e.g.*, *Koch Indus., Inc. v. Columbia Gas Transmission Corp.*, No. 89-2156 "G," 1990 U.S. Dist. LEXIS 5564, at *3, 1990 WL 72789, at *1 (E.D. La. May 29, 1990).

When discovery questions are raised, another principle is often invoked. As explained by one court, "[w]here . . . the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion." *Kresefsky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *accord, e.g.*, *Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 U.S. Dist. LEXIS 51609, at *7, 2010 WL 2044477, at *2 (N.D. Tex. May 24, 2010) (citing *Scott v. Monsanto Co.*, 868 F.2d 786, 793 (5th Cir. 1989) (citing *Eastway Gen. Hosp. v. Eastway Women's Clinic, Inc.*, 737 F.2d 503, 505 (5th Cir. 1984))); *Arters v. Univision Radio Broadcasting TX, L.P.*, No. 3:07-CV-0957-D, 2009 U.S. Dist. LEXIS 39924, at *8, 2009 WL 1313285, at *2 (N.D. Tex. May 12, 2009); 12 CHARLES ALAN WRIGHT *ET AL.*, FEDERAL PRAC. & PROC. § 3069 (2d ed.) ("[I]t is extremely difficult to justify alteration of the magistrate judge's

nondispositive actions by the district judge."); *cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006) ("The striking of a balance of uncertainties can rarely be deemed unreasonable[.]"); *United States v. Santiago*, 826 F.2d 499, 505 (7th Cir. 1987) (concluding that abuse of discretion occurs "only when no reasonable person could take the view adopted by the trial court").

This deferential approach is "especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceeding." *Public Interest Res. Grp. v. Hercules, Inc.*, 830 F. Supp. 1525, 1547 (D.N.J. 1993).This power is accentuated by the minimal relevance standard set forth in Rule 26, FED. R. CIV. P. 26(b)(1), and the diversity of sanctions authorized by Rule 37, FED. R. CIV. P. 37(b), as the Rules together form an interlocking framework which favors disclosure subject to a few well-defined and narrowly-construed exceptions, *see, e.g.*, *Herbert v. Lando*, 441 U.S. 153, 175, 99 S. Ct. 1635, 1648, 60 L. Ed. 2d 115 (1979) ("Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances."); *United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir. 1992) ("[T]he [attorney-client] privilege is to be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" (quoting *In re Grand Jury Investigations*, 599 F.2d 1224, 1235 (3d Cir. 1979))); *cf.* Amir Shachmurove, *Purchasing Claims and Changing Votes: Establishing "Cause" under Rule 3018(a)*, 89 AM. BANK. L.J. 511, 531–35 (2015) (explaining how procedural rules are typically interpreted by federal courts).

As a matter of context, of particular importance here are three distinctive lines of precedent within this jurisprudence. First, both these discovery rules have been persistently invoked by magistrate judges (and district court judges) in finding waiver of a valid objection

upon a party's use of boilerplate. *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 513 (N.D. Iowa 2000) (collecting cases); *see also, e.g.*, *Mills v. East Gulf Preparation Co.*, 259 F.R.D. 118, 132 (S.D.W. Va. 2009) ("Objections to Rule 34 requests must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 528 (S.D.W. Va. 2007) ("There is abundant caselaw to the effect that boilerplate objections to Rule 34 document requests are inappropriate."); *Athridge v. Aetna Cas. & Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) ("Although Rule 34 governing production of documents does not contain identical language [as Rule 33], no reason exists to distinguish between interrogatories and requests for production as to the requirement for specificity and the risk of waiver." (internal quotation marks omitted)); *Redland Soccer Club, Inc. v. U.S. Dep't of the Army*, 55 F.3d 827, 856 (3d Cir. 1995) ("[T]he party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." (internal quotation marks omitted) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982))); *McLeod, Alexander, Powel & Paffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (holding saying "an interrogatory was overly broad, burdensome, oppressive and irrelevant was not adequate to voice a successful objection to an interrogatory" and seeing "no reason to distinguish the standards governing responses to interrogatories from those that govern responses to production requests" (internal quotation marks omitted)).

Second, assertions of work-product protection and the attorney-client privilege have repeatedly fallen for similar reasons. *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 662 (D. Colo. 2000); *accord, e.g.*, *Bess v. Cate*, 422 F. App'x 569, 572 (9th Cir. 2011) (finding that "well-established law that parties seeking to invoke privileges are not permitted to provide mere

blanket objections to discovery requests" supported a magistrate judge's order to sanction parties who "lodged blanket objections and [thereby] failed to provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection"); *Burlington N. & Santa Fe Ry. v. Kapsner*, 408 F.3d 1142, 1148 (9th Cir. 2005) (quoting FED. R. CIV. P. 26(b)(5) advisory committee note (1993 amendments.)); *MMAR Grp. Inc. v. Dow Jones & Co. Inc.*, 187 F.R.D. 282, 292 n.6 (S.D. Tex. 1999) (concluding that a party's five general objections, including the attorney-client, work-product, and investigative privileges, were pure boilerplate that impermissibly hampered its opponent's ability to prosecute its own case); *Athridge v. Aetna Cas. & Surety Co.*, 184 F.R.D. 181, 194 (D.D.C. 1998) (finding that assertions of the attorney-client privilege and work-product doctrine were too general to satisfy Rules 33 and 34); *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992) ("Objections, in such boilerplate terms as those stated by [d]efendants, are improper and therefore no claim of privilege at all." (internal quotation marks omitted) (quoting *Int'l Paper Co. v. Fireboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974))). Logic supports this particular tendency, as the burden of proving any privilege's applicability always rests on the party seeking to shield evidence from disclosure. *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 1577, 48 L. Ed. 2d 39 (1976).*Hickman v. Taylor*, 329 U.S. 495, 512, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947). In design and intent, the Rules favor disclosure and a narrow understanding of even the most well-established privileges, facts that require a party to assert it clearly and assert it exactly so. *See, e.g.*, *United States v. Mendelsohn*, 896 F.2d 1183, 1188-89 (9th Cir. 1990) (holding that an inaccurate statement of a privileged communication waives the privilege with respect to that communication); *Clark v. United States*, 289 U.S. 1, 16, 53 S. Ct. 465, 470, 77 L. Ed. 993 (1933) ("A privilege surviving until the relation is abused and vanishing when abuse is shown to the satisfaction of the judge[.]"); *cf. United States v. Richard Roe, Inc. (In re Richard Roe, Inc.)*, 68 F.3d 38, 40 n.2

(2d Cir. 1995) (noting that since the attorney-client privilege and work product immunity "substantially overlap," no need exists for a different piercing standard for attorney work product for purposes of the crime-fraud exception).

Finally, for purposes of measuring the sufficiency of a party's privilege log under Rule 26(b)(5)(B), claims of work-product protection and attorney-client privilege must satisfy the same minimal threshold. Consequently, if the log does not "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim," FED. R. CIV. P. 26(b)(5)(A)(ii), the claim must fail.[12] Any party resisting disclosure for any reason must produce a document index or privilege log, *see, e.g.*, *Bregman v. Dist. of Columbia*, 182 F.R.D. 352, 363 (D.D.C. 1998); *First Am. Corp. v. Al-Nahyan*, 2 F. Supp. 2d 58, 63 n.5 (D.D.C. 1998); *Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 1 (D.D.C. 1999), and the failure to provide a complete privilege log demonstrating sufficient grounds for assuming the relevant shield defeats its application, *see Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996).

## B.     Application

Based on the foregoing law, this Court is unpersuaded by the Motion to Amend to the extent that it predicates reconsideration on the basis of this Court's application of the incorrect standard of review to the MJ's Second Ruling. The reasons are threefold. First, while the legal

---

[12] Thus, the Defendants' purported distinction between work-product and privilege is, at best, sophistry. (*See* Doc. 176 at 6.) A failure to distinguish between the two does not affect the standard, such that the Defendants' failure to provide a log sufficiently specific to evaluate either shield's application forfeits its protection. That, and no more, was found by the MJ.

adequacy of the relevant privilege logs may be a question of law, the Second Ruling's conclusion in this regard was predicated upon a factual determination: that the description provided by the Defendants as to two withheld documents was inaccurate and, by virtue of being true, threw other entries into suspicion. Stated differently, the MJ reached a factual conclusion first, *In re Grand Jury Subpoenas*, 561 F.3d 408, 413 n.10 (5th Cir. 2009); *St. Paul Fire & Marine Ins. Co.*, 2002 U.S. Dist. LEXIS 20120, at *3–4, 2002 WL 31375611, at *2; *cf. In re Public Defender Serv*., 831 A.2d 890, 898 (D.C. 2003) ("Rulings on claims of testimonial privilege typically involve intermingled questions of fact and of law."); that this factual determination later formed the basis of a legal conclusion does not mean *de novo* review was compelled, *see supra* Part III.A.2. The ineluctably factual determination—that the elements of the attorney-client privilege and/or the work-product doctrine, as established by uncontested precedent, had not been adequately shown by the Defendants' deficient logs, a failure sufficient to result in the waiver of the underlying privilege and/or work product claim, *see, e.g.*, *Corvello v. New Eng. Gas Co.*, 243 F.R.D. 28, 34 (D.R.I. 2007)—was supported by the record as a whole, its legal consequences irrelevant to its character as a factual query.

Second, upon so finding, the MJ exercised the broad discretion afforded to him under the Rules in the management of discovery to find a general waiver of the underlying waiver. As shown above, this result coheres with dozens of cases compelling production whenever a party's privilege log has been found inadequate. *See, e.g.*, *Bess*, 422 F. App'x at 572; *see supra* Part III.A.2. In such cases, most surely whenever the magistrate judge is deeply familiar with the case at hand, great deference is habitually given—and owed. *See, e.g.*, *Nunn*, 2010 U.S. Dist. LEXIS 51609, at *7, 2010 WL 2044477, at *2; *Arters*, 2009 U.S. Dist. LEXIS 39924, at *8, 2009 WL 1313285, at *2; *Kresefsky*, 169 F.R.D. at 64; *Public Interest Res. Grp.*, 830 F. Supp. at 1547.

Otherwise, the very efficiency so prized by Rule 1 would be needlessly endangered, and the functioning of the Rules stymied to no good end. When this Court referenced its deference to the MJ's determination, it meant no more than such legally sanctioned respect, according the MJ the respect that precedent clearly mandates, and did so because, as the foregoing cases reveal, a substantial body of law can be found to buttress the Second Ruling. With so much precedent extant, it cannot be "contrary to law," as § 636 requires for reversal of a legal conclusion to occur. Indeed, the First Ruling would have been amply supported by this growing body of case law; having been granted this first reprieve, Defendants now ask this Court to again reject substantial precedent. It did not do so then, and it will not do so now in light of the prevailing standard for an order's reconsideration.

Lastly (and repeatedly), as this same law shows, Defendants conflate the standard of review and the basis for reversal. While a district court reviews legal conclusions *de novo*, it can only reject a legal conclusion based on the law's clear misapplication. As such, if either case law or statute supports a magistrate judge's determination, the decision cannot be rightly characterized as "contrary to law" and cannot be overturned. In this sense, to argue, as Defendants have done in the Motion to Amend, that the improper standard of review was applied misses the Relevant Order's central thrust: that the MJ had ample legal basis in law (and in fact) to issue the punitive decision that he did. Because the Second Ruling did so, it must be affirmed.

Not one of Defendants' arguments convince this Court that a manifest error sufficient to trigger reconsideration has occurred. As already noted, much law and a reasonable factual determination support the Second Ruling. *See supra*. When so much case law can be marshalled to support waiver's imposition and where the predicate question is an inescapable factual one, the resulting order withstands review pursuant to § 636. In addition, to construe a discrete ruling

as to two documents' privileged status as creating the law of the case so as to bar the disclosure of documents subsequently ordered to be released based on later analysis reads this limited doctrine far too broadly. Previously, the MJ made a discrete decision as to the status of certain documents; afterward, based on Defendants' subsequent misdeed, he issued a broader ruling justified by more general and ongoing concerns. As a court may always revisit its earlier determinations, *see Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1423 (5th Cir. 1995), and as the first decision was narrowly tailored and tightly focused, it cannot be said to have created a true inconsistency worthy of being called a question of law. At most, such apparent inconsistency may require clarification; it does not invalidate an otherwise valid order. Regardless, with the later order's breadth rooted in its peculiar circumstances, the Defendants could have fulfilled either obligation at the time in which they were ordered to do so, and since such compliance was possible, the duties imposed by two orders can be easily reconciled. Even putting these facts aside, the law of the case doctrine is a discretionary rule of practice, permitting a change of position when an original ruling no longer meets present exigencies. *See, e.g.*, *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983); *Tel-Phonic Servs, Inc. v. TBS Int'l Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). The Second Ruling can be so characterized.

Finally, Rule 26 mandates that a party consistently update disclosures. FED. R. CIV. P. 26(e). That the Defendants did not have materials that should be disclosed in their possession does not change their obligation to surrender those documents once such possession was gained. Regardless, even though Defendants contend that the MJ found that they withheld unprivileged documents on December 18, 2014 that they did not obtain until March 2015, the Second Ruling says no such thing. Instead, the MJ highlighted how the Defendants' insistence that the omission

of certain materials in their privilege logs should be excused "due to the fact that such documents are supposed to appear on *Morgan Lewis'* privilege log . . . suggest[ed] . . . that the [D]efendants may be withholding additional relevant discoverable materials – but not disclosing them on any privilege log." (Doc. 131 at 7.) Certainly, in this passage, the Second Ruling did not compel Defendants to surrender what they never had. Rather, as its fair reading shows, the MJ was spotting a pattern and summarizing what Plaintiff had intuited. That he too came to this conclusion—that certain documents that should not have been withheld had been filed and stored away—does not mean that he embraced a temporal impossibility. Even if he did, however, the mistake is simply too minor to undercut the cogency of his eventual conclusion: that without full disclosure, the pertinence and suitability of Defendants' claims of privilege or work-product could not be properly evaluated. Once more, the Court finds this result to accord with much law and much reason.

To summarize, where an abundance of case law supports a magistrate judge's legal position and the Parties' documented history lends every credence to his factual analyses, the law is clear: a magistrate judge's decision must be sustained. Here, the MJ, intimately familiar with a pattern of delay and privy to two inaccurate factual description of documents in a dilatory party's latest logs, ordered a complete release that would allow confirmation of which documents, if any, were improperly shielded from disclosure. In other words, the Second Ruling sought to do no more than ensure that the Defendants would finally comply with the duties imposed upon them by settled law. In such cases, justice and efficiency, Rule 1's lodestars, and the Rules' general bias in favor of discovery is better served by obtaining confirmation, not again withholding data for otherwise unverifiable reasons. *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("The attorney-client privilege cannot at once be used as a shield

and a sword."). For fairness' sake, both law and record here can support this result. *See, e.g.*, *Herbert v. Lando*, 441 U.S. 153, 175, 99 S. Ct. 1635, 1648, 60 L. Ed. 2d 115 (1979) ("Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances."); *United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir. 1992) ("[T]he [attorney-client] privilege is to be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" (quoting *In re Grand Jury Investigations*, 599 F.2d at 1235)). As such, § 636 impels but one end.

In their third and final ground for reconsideration, Defendants point to the supposed lack of clarity in the Second Ruling as to the appointment of a special master. However, as the SEC notes, this reference appeared in a footnote in the Second Ruling, (Doc. 131 at 15 n.33), and the Defendants never "elected to seek such clarification from the Magistrate Judge himself in the days and weeks following the Magistrate Judge's ruling." (Doc. 182 at 19.) Furthermore, until the filing of the Motion to Amend, the Defendants did not "raise this issue anywhere in their appeal to this Court." (*Id.*) This Court agrees with the SEC: having chosen not to seek clarification from the MJ and having failed to previously raise this point, Defendants are not entitled to transfigure an ambiguous footnote into a legal defect so significant as to invalidate an otherwise clear order. Whatever ambiguity such a footnote effects is the product of their own deliberate decision to leave it so unclear.

## IV.   CONCLUSION

Considered in light of this case's full record, including the Defendants' multiple chances to provide a privilege log sufficient to satisfy Rule 26(b)(5), the Second Ruling contains neither clear error nor a law's misapplication. In the absence of such a demonstration, no reconsideration

of this Court's own order so finding is merited pursuant to well-established jurisprudence. Accordingly, this Court orders as follows:

(1) The Motion to Amend is DENIED to the extent that it seeks reversal of this Court order affirming the Magistrate Judge's Second Ruling on the basis of the incorrect application of the controlling standard of review.

(2) Nonetheless, as the SEC has already stated, (Doc. 175 at 2; *see also* Doc. 174 at 4), and as Defendants themselves request as a form of alternative relief, (Doc. 131 at 4), the Defendants are not now required to produce attorney-client documents produced since the initiation of this litigation.

(3) On or before **11:59 a.m.**, on **April 14, 2016**, the Defendants must produce every document required by each and every order issued by this Court and the Magistrate Judge.

(4) This production will not be stayed, subject to a convincing showing of extraordinary circumstances, in light of the conduct of these Defendants and the abundant case law supporting the waiver of their privilege.

Signed in Baton Rouge, Louisiana, on April 6, 2016.


_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**